**In re the ESTATE OF Harold D. LOGAN, Deceased.**

**Catherine Walsh SMITH and Dustin Logan, Appellants,**

v.

**Jerry THORNSBERRY, Public Administrator, Personal Representative of the Estate of Harold Logan, Deceased, Peggy Logan and James E. Baldwin, Respondents.**

**No. 18042.**

Missouri Court of Appeals, Southern District, Division One.

April 27, 1993.

William C. Prince, Springfield, for appellants.

James E. Baldwin, Mark E. Rector, Donnelly, Baldwin & Wilhite, Lebanon, for respondents.

PARRISH, Chief Judge.

This is an appeal from an order entered by the Probate Division of the Circuit Court of Pulaski County, Missouri. The order granted, in part, a claim for delinquent child support. It also awarded personal representative's fees to respondent Peggy Logan and attorney's fees to respondent James E. Baldwin. The appeal is directed to the amount of the claim for delinquent child support that was granted and the award of personal representative's fees to respondent Peggy Logan. This court affirms.

Appellants are Catherine Walsh Smith, an ex-wife of decedent, and Dustin D. Logan, the son of Ms. Smith and Harold Logan, decedent. The marriage of Ms. Smith and decedent was dissolved by a decree of dissolution of marriage entered December 30, 1974, in the Circuit Court of Stone County, Missouri. Dustin was the only child born of that marriage. He was born September 25, 1971. The decree ordered decedent to pay child support in the amount of $150 per month. A subsequent modification reduced the amount of child support to $100 per month.

After the dissolution of the marriage of Harold Logan and Ms. Smith, he married Peggy Logan. On June 28, 1987, Harold Logan died. Peggy Logan was appointed personal representative of decedent's estate.

Appellant Catherine Smith filed a claim against decedent's estate for back child support in the amount of $11,735. The trial court awarded Ms. Smith $7,184.78. The trial court allowed "back child support" from March 31, 1981, to June 1987. Facts applicable to appellants' second point

on appeal will be set forth in the part of this opinion in which that point is discussed.

■ Appellants' first point asserts that the trial court erred by not allowing the part of Ms. Smith's claim for back child support "for the period prior to March 31, 1981." Ms. Smith contends that payments of child support by Harold Logan kept the entire judgment alive; that the trial court's award should have included amounts decedent owed for child support from the date of the decree of dissolution of marriage, December 30, 1974, until March 31, 1981, the date from which the trial court allowed the claim for unpaid child support.

Appellants' brief represents that "Harold Logan paid no child support until an action was undertaken against him in Stone County, Missouri, in March of 1981 for the payment of child support." This court's scrutiny of the transcript[1] has not identified testimony upon which this statement was based. However, Ms. Smith was asked the following questions and gave the following answers:

Q. And Mr. Logan was subsequently ordered to pay child support as a result of that divorce; is that correct?

A. Yes.

Q. Did you ever receive any child support payments directly from Mr. Logan himself?

A. No.

Q. Any payments that you've received were from the—

A. The court.

Q. So, that whatever the court's records reflect would be the payment that you received—

---

1. The testimony at the evidentiary hearing on appellants' claim and on the respondents' requests for personal representative's fees and attorney's fees was brief. The entire transcript that is part of the record on appeal contains only 41 pages of testimony. The quality of the transcript is grossly lacking. In the 41 pages that contain testimony of witnesses, 38 have unrecorded answers that are depicted as "(inaudible)." Many pages have more than one "(inaudible)" designation.

The trial judge's "certification" of the transcript stated: "The Trial Court having read the transcript, even with the inaudibles herein, certifies said transcript."

Unfortunately, this is a sample of a lack of quality that is found too often in transcripts prepared from audio recordings made by magnetic tape recording devices used to preserve the "verbatim record" in cases tried before associate circuit judges. The absence of a qualified certified court reporter at trial for purposes of making a complete, accurate record is woefully apparent.

A. Yes.

The parties have alluded to a proceeding in 1981 in Stone County, Missouri, filed on behalf of Ms. Smith that was directed toward enforcement or collection of back child support. The legal file includes a copy of a pleading entitled "Motion for Contempt Citation." A "filed" stamp on the pleading indicates that it was filed May 22, 1980, in the Circuit Court of Stone County. The record does not reveal what action was taken, if any, with respect to the pleading.

The transcript includes dialogue between trial counsel and the trial court in which appellants' trial counsel stated that the claim that was made for back child support was "based upon a judgment, a decree of dissolution dated 12/30/1974 providing for child support." There is also reference to a "modification, as well as an order in 1981."[2] Later, during the course of the hearing, reference was made to having "offered all the certified documents ... as C." The "certified documents" were further described by appellants' trial counsel as "certified copies of the child support records beginning in March 31, 1981, and going through August 29, 1986." "Exhibit C" was not filed with this court.

Appellants' trial counsel apparently presented, as Exhibit D, a compilation entitled "Paid to Catherine Smith." It was described as "dates and amounts paid to Division of Family Services, with a total showing of $3,265, which was paid (inaudible) Division of Family Services." The offer of Exhibit D in evidence was objected to by counsel for decedent's estate because "it's very cumulative in that the actual court records themselves would be the best evidence," and for relevancy. That objection was overruled even though no court records, or certified copies thereof, were offered in evidence or otherwise presented to the trial court. Exhibit D was not filed with this court.

The respective positions of appellants and respondents regarding the first point on appeal revolve around an interpretation of § 516.350.[3] Appellants refer to *Lanning v. Lanning,* 574 S.W.2d 460 (Mo.App. 1978), for the proposition that judgments in divorce actions that provide for periodic payments of child support "are 'presumed to be paid and satisfied after the expiration of ten years from the date of the original rendition thereof' absent being kept alive by payments within such period or by revival." *Id.* at 462, *quoting* § 516.350, RSMo 1969. Although this court is unable to glean with certainty what facet of the holding appellants deem helpful to them, it appears they are asserting that the compilation of data in their Exhibit D was evidence of sufficient payments on the judgment to keep it alive. That reliance is misplaced in that there is no showing that the trial court had any evidence of payments that were "entered upon the record" of the court in which the judgment for child support was rendered. Regardless of the correctness or lack of correctness of the trial court's admission of Exhibit D into evidence, that exhibit was not an acceptable substitute for records of the court.

In *Lanning,* the court upheld the presumption that a judgment debt was paid because more than ten years had passed since the judgment had been rendered. There was no record of payment "entered upon the record." There "was a *margin entry purportedly made by [Mrs. Lanning's] attorney on the judgment record under date of April 11, 1977,* acknowledging receipt of all payments due through December 15, 1965, of several sporadic payments in 1968 and 1970, and of one payment in 1977." 574 S.W.2d at 462. The court held that judgment creditors' recitals in margins of judgment records would not suffice as being payments that were "duly entered upon the record." The court af-

---

**2.** The frustration produced by transcripts replete with "(inaudible)" notations, see n. 1, *supra,* is illustrated by the following quotation from the transcript in this case.

Q. [by appellants' trial counsel]—modification, as well as an order in 1981—Right—that

basically we argue that (inaudible) and then, attached to that is (inaudible) 1984.

**3.** References to statutes are to RSMo 1986 unless stated otherwise.

firmed the trial court's order quashing a garnishment issued in an attempt to collect the time-barred judgment. Here, as in *Lanning*, there was no showing of payments "duly entered upon the record." [4] Appellants' first point is denied.

■ Appellants' second point contends that the trial court erred in awarding personal representative's fees to Peggy Logan. Appellants argue that the award of fees to Peggy Logan was improper because she wasted assets of the estate and failed to discharge fiduciary duties and was, therefore, not entitled to receive the personal representative's fee.

Appellants assert that Peggy Logan, as personal representative, "made a number of payments to various individuals and creditors without obtaining prior court approval as to the propriety of said claims." Appellants also complain that although the required "inventories, accountings and settlements" were filed, they were not timely filed.

The only payments that appellants specifically discuss in their brief are a loan payment to Betty Logan [5] for $15,000 and "a 'loan payoff withdrawal' in the amount of $14,151.43." The page in the transcript that appellants have referenced in addressing these payments contains the following questions asked by appellants' trial counsel [6] and answers given by Peggy Logan:

Q. Mrs. Logan, I would like to ask you a couple of questions with respect to that inventory in the Yamaha of Lebanon account—accounting. Do you recall on 8/18/87 paying to Betty Logan $15,000?

A. Yes.

Q. And what was that for?

A. (Inaudible).

Q. And did you seek court approval to make that payment to Betty Logan?

A. (Inaudible).

Q. And as you sit here today, can you tell me that you recall seeking court approval?

A. I don't know.

Q. Let me show you what's been marked as Exhibit B, the Yamaha Lebanon account. There are—There are numerous entries on there as to payments that were made. Do you recall seeking court approval to make any of the payments that are shown on that accounting?

A. No.

Q. On 7/7/87, it shows a loan payoff withdrawal in the amount of $14,151.43; do you know what that was for?

A. I believe that was an unpaid bill.

Q. And what type of loan was that? (Inaudible).

---

4. This court further notes that although appellants rely upon *Lanning's* application of § 516.-350, RSMo 1969, that statute was revised in 1982.

> In 1982 the legislature amended § 516.350, RSMo 1978 by reenacting the former statute as section 1 and adding one additional section—section 2. (S.B. 468—81st General Assembly Second Regular Session). In view of the legislative reenactment, the clear intent of the general assembly expressed in the reenacted subsection 1 was to require either a revival "upon personal service duly had upon the defendant or defendants therein," *or* a payment made on the judgment "and duly entered upon the record thereof" in order to revive the judgment and extend the time period past "the expiration of ten years from the date of the original rendition" of the judgment under that subsection.

*Ferguson v. Ferguson*, 636 S.W.2d 323, 324 (Mo. banc 1982). The court, in *Ferguson*, further explained that subsection 2 of the statute addresses child support and maintenance orders.

> By reason of subsection 2, the ten-year period with respect to each periodic child-support or maintenance payment runs from the due date of the payment. And each payment "shall be presumed paid and satisfied after the expiration of ten years from the date that periodic payment is due, *unless the judgment has been otherwise revived as set out in subsection 1 of this section.*"

*Id.* Subsection 2 became effective August 31, 1982, as to judgments, orders, or decrees that have not been presumed paid, by the terms of subsection 1, on that date. Section 516.350 has not been changed since the 1982 amendment.

5. The record on appeal does not indicate whether Betty Logan is a relative of Peggy Logan or decedent.

6. Appellants are represented on appeal by a different attorney than the attorneys who represented them before the trial court.

A. (Inaudible).

Q. You don't recall seeking court approval for that?

A. (Inaudible).

References were made to "Exhibit B, the Yamaha Lebanon account." The trial court judicially noticed an attachment to an inventory that was filed by Peggy Logan that was designated "Yamaha of Lebanon Account." Exhibit B was one of two exhibits that were filed with this court. Included on the attachment is reference to "Loan Payoff Withdrawal ...... 14,169.43" and "to Betty Logan, payment of business loan in full ...... 15,000.00." There is no indication of payment of the amount "$14,151.43" to which reference is made in the questions asked Peggy Logan. Presumedly, the $14,169.43 withdrawal is the one in question.

Prior to the death of decedent, he and his wife, Peggy Logan, were business partners. Their partnership business was Yamaha of Lebanon, a motorcycle business. The "Yamaha of Lebanon Account" that was attached to the inventory was the accounting incidental to the winding-up of the partnership business. It was filed by Peggy Logan as surviving partner. § 473.220. It reflected the actions taken by Peggy Logan, as surviving partner, in settling the partnership in accordance with § 473.223.

Notwithstanding the provisions in chapter 473 relative to partnership estates and the duties and obligations of a surviving partner, §§ 473.220–.230, appellants contend that Peggy Logan failed to discharge her duties that are required by § 473.153. They rely upon *Estate of Stellwag*, 817 S.W.2d 466 (Mo.App.1990), and *In re Mills Estate*, 349 Mo. 611, 162 S.W.2d 807 (1942), in asserting that Peggy Logan should have been denied a personal representative's fee.

*Stellwag* involves abuses by a personal representative in incurring expenses for storing unproductive property and paying encumbrances on property that was specifically bequeathed to a designated beneficiary. North Carolina law applied. 817 S.W.2d at 468. Under that law, property in a decedent's estate that was subject to encumbrances was required to be taken by a beneficiary subject to those encumbrances. *Id.* The personal representative had no authority to apply other assets of decedent to pay the encumbrances. *Stellwag* did not involve partnership property. It is not applicable to the facts of this case.

*Mills* is likewise inapplicable. It did not involve a partnership. It involved unwarranted continuances of a business by a personal representative.

The trial court found that no objections were filed regarding annual and final settlements filed by Peggy Logan. It found "[t]hat Peggy Logan is entitled to her fee as personal representative," and entered its order awarding the fee.

This case is reviewed pursuant to Rule 73.01(c)(2). This court finds that there is evidence to support the trial court's award of personal representative's fees to Peggy Logan; that the award is neither against the weight of the evidence nor is it the product of erroneous declaration or application of law. *In re Marriage of Lafferty*, 788 S.W.2d 359, 361 (Mo.App.1990). Point II is denied.

The order of the trial court is affirmed.

CROW, P.J., and SHRUM, J., concur.